64  636
70  580
64  636
122  429
64  636
125  256
64  636
127  657
64  636
138  581

THE McCORMICK HARVESTING MACHINE COMPANY v. WILLIAM COCHRAN.

*Sale of machine on warranty—Evidence—Notice of rejection—Return of property.*

1. It is competent for witnesses who have seen two machines work in the harvest field to testify as to their relative merits in a suit involving an alleged breach of warranty that the one sold the defendant would do as good work as the other, owned at time of sale by his brother, and it is not essential that the grain in which they were seen working should be of the same heft and height. These are subjects for cross-examination, and for the consideration of the jury.

2. In such a case testimony offered on rebuttal to show that the machine sold defendant was as good as any in the market was properly excluded.

3. The instructions of the court (see opinion) are held to be warranted under the evidence in the case.

[1] See *Just v. Porter, ante,* 565.

Error to St. Joseph. (Joslin, J., presiding.)   Argued January 11, 1887.   Decided February 3, 1887.

Assumpsit.  Plaintiff brings error.  Affirmed.  The facts are stated in the opinion.

*William O. Pealer* and *Howard & Roos*, for appellant.

*Howell, Carr & Barnard*, for defendant.

SHERWOOD, J.   This was an action of assumpsit brought by the plaintiff in justice's court to recover the purchase price of a self-binding harvester.

The defendant pleaded the general issue, with notice that defendant would show that the machine was warranted to him by the plaintiff, when purchased, to do first-class work, to do as good work as a machine owned by James Cochran, a brother of the defendant, who resided in the neighborhood, and to give perfect satisfaction to the defendant; that defendant was to have the privilege of trying the machine in doing his harvesting, and unless it complied with the warranty, and was satisfactory to the defendant, he was not to keep it, or be obliged to pay for it; and that the machine, when used, failed to perform as warranted, and was not satisfactory to the defendant.

The defendant had judgment before the justice, and upon the trial at the circuit he again prevailed, and the plaintiff brings error.

A very large number of errors are assigned upon the proceedings had .in the circuit.  We shall not consider them *seriatim*.   Eight were assigned upon rulings of the court on taking the testimony.

The defendant is a farmer residing near Three Rivers, in St. Joseph county, and his brother James Cochran lived in the same neighborhood.  Mr. Burrows was in the employ of the agents of the plaintiff at Three Rivers, and made sale of

the machine to the defendant.   He knew of James Cochran's machine.

On the trial, to prove a breach of the warranty as laid by the defendant, he was allowed to state that the machine in question did not do as good work as his brother James'. This was objected to, and the rulings upon this and several other similar statements are made the subject of plaintiff's first, second, third, and fourth assignments of error.

We see no objection to these rulings.   The testimony only tended to prove a breach of the warranty, as claimed by the defendant, and not positively denied by the plaintiff's agent. The comparison called for was one that any person could make who was accustomed to the use of harvesting machines, and had seen the two work, and there was no question but that the witnesses in this case were qualified in that respect. It was not necessary that the wheat in which the machines were observed should have been of the same heft and height to make the testimony competent.   Those were subjects for cross-examination, and for the consideration of the jury.

On rebuttal, the plaintiff offered to show that the McCormick was a good binder, and for that purpose asked the following question:

"What do you say as to the McCormick being as good a binder as any in the market?"

Objection to this question was properly sustained.   The merits of the machine in question alone were material in this case.

While the defendant was using the machine in question in his wheat harvest, James McJury saw the manner in which it worked in going around the field once.   He was sworn for the plaintiff.   On his direct examination he said:

"I am a farmer.   I know something about binders.   Father has one now,—the McCormick.   I was in the defendant's field once last harvest while he was harvesting.   Saw the machine work.   It was working well.   I think it worked well."

On cross-examination the witness stated:

"Arthur Cochran was driving. My attention was not called to the working of the machine particularly."

He was then asked by plaintiff's counsel:

"Did the defendant (Mr. Cochran) or his boys make any complaint that it was not working well?"

Certainly what the boys might have said was both immaterial and hearsay; and, so far as the question related to the defendant, it was improper examination, as it does not appear any conversation whatever was had with him, and the most that could be claimed for it is that there was a probability, if the machine worked badly, defendant would have so said to the witness. The witness did not represent the plaintiff at the time, and it does not appear that he made known his business in the defendant's field, or that he was within speaking distance of the defendant, or any of his boys. We think, under these circumstances, so far as the testimony called for related to the defendant, it was clearly subject to the objection taken.

When the testimony closed, the plaintiff's counsel asked the court to charge the jury as follows:

"1. In this case, the plaintiff has shown a sale of the machine at a fixed price, and a delivery of the same to defendant, and the plaintiff is entitled to recover unless you find a breach of the warranty which accompanied this sale; and the burden of proof is on the defendant to show the breach of the warranty.

"2. The plaintiff claims that the warranty was that the machine would do good work. If you find this to be the warranty, then if the machine did do good work, or would have done good work if properly managed, or could have been easily fixed so as to do good work, then the plaintiff should recover; and, if the machine did not work well, it was the duty of the defendant to notify Schoch & Griffiths, and give them an opportunity to remedy the defect, if they could; and, if he did not do so, the plaintiff is entitled to recover.

"3. The defendant claims the warranty to be that the

machine should do as good work as his brother James' machine, which was a Deering, with the same kind of a binder as the machine in question; and if you find the machine in question could, if properly managed, do as good work as his brother James' machine, then the plaintiff should recover; and it was the duty of defendant to notify plaintiff's agent if the machine did not do good work, so that it might be remedied.

"4. The defendant testified that he kept the machine during the entire wheat and oat harvest, and until October following, without saying a single word about not desiring to keep the machine. It was the duty of defendant to speedily notify plaintiff that he did not intend to keep the machine; and if he used it to cut oats, and after that kept the same until October without complaint, he is guilty of laches, and has thereby waived all breaches of warranty, and plaintiff must recover.

"5. If you find from the evidence that the machine was warranted to give defendant satisfaction, it should be a reasonable satisfaction; and, if it did not work to his satisfaction, he should give reasonable notice.

"6. If the jury find from the evidence defendant was to have the whole of his wheat harvest to try the machine, and that he afterwards used it to cut his oats, then he must be presumed to have accepted the machine, and your verdict should be for the plaintiff."

The circuit judge gave the first and fifth requests, but refused to give the others except as modified in the general charge.

It was no part of the contract between the parties that we have been able to discover from the record that, if the machine did not comply with the contract when operated, the defendant should notify the plaintiff of the fact, or return the machine to the plaintiff. The contract seems to have been silent upon that subject. It appears, however, that the defendant did give the plaintiff, once or twice while he was attempting to use the machine and make it work, notice that it did not do good work, and that he was not satisfied with it; and the judge told the jury, if they found the contract to be as defendant claimed it, this was all he was required to do; that he was not obliged to return the machine.

We find no error in this instruction. It does no more than state the law as laid down in the elementary works and reports. 2 Add. Cont. 942; 2 Benj. Sales, § 978; Leake, Cont. 409; Anson, Cont. 286; *Starr v. Torrey*, 22 N. J. Law, 190; *Gibson v. Vail*, 53 Vt. 476; *Hunt v. Wyman*, 100 Mass. 198; *Phelps v. Whitaker*, 37 Mich. 72; *Osborn v. Rawson*, 47 Id. 206; *Wood Reaping & Mowing Machine Co. v. Smith*, 50 Id. 565; *McCormick Harvesting Machine Co. v. Chesrown*, 33 Minn. 32 (21 N. W. Rep. 846).

Subsequent to the giving of the plaintiff's first and fifth requests, the court charged the jury as follows:

"The defendant had a right to give the machine a fair trial under all the circumstances, and was under no obligations to return it to the plaintiff when it failed to work satisfactorily to him, unless you find he expressly agreed so to do; and the fact that he might have concluded to use the machine through harvest, or have allowed it to remain on his farm after harvest, is not sufficient of itself to show an acceptance on his part. If the jury find from the evidence that the plaintiff's agent knew that the machine was not working well from time to time, and agreed to put it in proper condition during such time, the defendant was under no obligations to return it, or offer to return it; and the fact that he allowed it to remain on his land, and used it while it was there in this unsatisfactory condition, and while they were endeavoring to repair it, would not be considered an acceptance on his part. If you find from the evidence that the defendant notified the plaintiff that the machine was not doing good work, then it became the duty of the plaintiff to see that the machine was made to work satisfactorily, and the defendant was under no obligations to notify them the second time that it was not. There is no evidence that the defendant was to notify the plaintiff that the machine did not do good work, or to notify the plaintiff that he did not intend to keep the machine. You are to say what the warranty was, and whether it was made good by the plaintiff."

The evidence appearing in the case fully warrants the giving of these charges.

64 MICH.—41.

The court also further charged upon the subject of the plaintiff's requests:

"If the jury find from the evidence that the plaintiff agreed to furnish the defendant a machine that would do as good work in harvest as his brother's (James Cochran), and further find that the machine furnished would not do as good work as James Cochran's, then their verdict should be for the defendant. If you find there has been a breach of the warranty in the machine not doing work as it was to, that it was not satisfactory to the defendant, then the fact that he used it to cut his oats did not raise the legal presumption that he had accepted the contract, and was not bound to pay for it. The simple rule would be, if he used the machine beyond the time he was to at first, he would be liable to pay for the use of the machine, as if he had taken his horse or wagon, or anything else, and used it."

These, with some other instructions given in the general charge, contained all that was necessary and proper to go to the jury upon the subjects included in the plaintiff's requests.

Eighteen paragraphs of the charge given voluntarily by the court are excepted to. We find no error in any of these paragraphs. Several of them, with great propriety, might have been omitted; but we fail to discover that any impressions would be likely to be made thereby upon the jury prejudicial to either party.

The judgment must be affirmed, with costs.

The other Justices concurred.